UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15-cr-13-TRM-SKL |
| ) | |
| JAMES HEDELSKY, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant James Hedelsky ("Defendant") [Doc. 48] without a separate supporting memorandum. Defendant argues for suppression of all incriminating statements he allegedly made to law enforcement during a custodial interrogation and for suppression of all evidence found during a post-interrogation search. As grounds, Defendant argues his Fifth Amendment rights and *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) were violated because he was interrogated without first being informed of his *Miranda* rights. Plaintiff United States of America ("the government") filed a response in opposition to the motion arguing suppression is not warranted because no constitutional or *Miranda* violation occurred [Doc. 53].[1]  I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

---

[1] The motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) by standing order. An evidentiary hearing on the motion to suppress was held on April 1, 2016.

**I.     FACTS**

On October 27, 2015, Defendant was indicted and charged with conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine (actual) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and possession with the intent to distribute 50 grams or more of methamphetamine (actual) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). During the evidentiary hearing, the government offered the testimony of Drug Enforcement Administration Task Force Officer Kyle Brewer ("Officer Brewer") and 17th Judicial Drug Task Force Officer Jose Ramirez ("Officer Ramirez"). Defendant offered his own testimony.

**A.  Testimony of Law Enforcement Officers**

As pertinent, Officer Brewer and/or Officer Ramirez testified as follows. On July 22, 2015, Takesta Smith ("Ms. Smith"), co-defendant David Hartley (Mr. Hartley"), and Defendant were traveling together in a black Nissan Pathfinder. Unfortunately for Defendant, law enforcement agents had received information from a confidential informant that Ms. Smith, who was a fugitive with an outstanding federal warrant, would be at the Northgate Shopping Center in Tullahoma, Tennessee. Law enforcement set up surveillance in the shopping center parking lot. An agent observed Ms. Smith get into another vehicle with the confidential informant. As Ms. Smith and the informant were driving away to a separate location, an agent saw Ms. Smith waving to two men standing by the Pathfinder. The two men were later identified as Mr. Hartley and Defendant. A few moments later about ¼ mile from the shopping center, Ms. Smith was arrested on the outstanding federal warrant and a distribution quantity of suspected methamphetamine was seized from near where she was sitting in the car with the informant.

After Ms. Smith's arrest, Officer Brewer and 17th Judicial Drug Task Force Director

Timothy Lane ("Director Lane"), who had remained at the Northgate Shopping Center area in two separate cars, pulled up behind the Pathfinder with Director Lane's emergency "blue" lights activated. At that time, the left rear door of the Pathfinder was open and Defendant and Mr. Hartley were standing nearby. Without raising his voice or drawing a weapon, Director Lane identified himself and asked the men who owned the Pathfinder. After the men answered that "T" or "Takesta" owned the Pathfinder, Director Lane asked if they had any belongings in the Pathfinder and they both said they did not. Defendant stated he had been driving the Pathfinder because he was the only occupant with a valid driver's license. Neither man had been handcuffed, restrained, or placed under arrest at this point. Director Lane began a search of the Pathfinder.

Officer Ramirez arrived at the scene about the time Director Lane entered the Pathfinder and began to search. During the search, Director Lane quickly found a camouflage bag containing a box that contained a distribution quantity of suspected ice methamphetamine. Officer Brewer and Officer Ramirez then arrested and handcuffed Defendant and Mr. Hartley. After Mr. Hartley and Defendant were arrested, they were both advised of their *Miranda* rights by Director Lane in the presence of Officer Brewer. Only about five minutes transpired from the time law enforcement first approached the men in the parking lot until they were arrested.

Ms. Smith and Mr. Hartley both waived their *Miranda* rights and were questioned later than day. Defendant was not questioned that day; instead, he was transported to the Coffee County Jail.

The next day, July 23, 2015, at the request of law enforcement Defendant was brought from his cell to a conference room at the jail where Officer Brewer, Director Lane, Officer Ramirez, and Officer Chris Smith were present to interrogate Defendant. Prior to beginning the

3
Case 4:15-cr-00013-TRM-SKL   Document 56   Filed 04/06/16   Page 3 of 11   PageID #: 210

interrogation, Director Lane advised Defendant of his *Miranda* rights and asked him if he understood them. Defendant indicated that he understood his rights and voluntarily spoke with law enforcement. The paperwork completed by Officer Brewer states Defendant was informed of his *Miranda* rights, but does not specifically state Defendant waived those rights. During the interrogation, Defendant was cooperative and made several incriminating statements, including that he had a safe in a garage in Georgia that contained methamphetamine and money. Defendant told the officers how to locate the garage and provided the combination for the safe.

Due to the number of officers present, the interrogation took place in a conference room at the jail that was not specifically equipped with recording equipment like the smaller jailhouse interview room. Defendant was in his mid-50s, competent, and familiar with the criminal justice system due to his past felony drug convictions. During the 30-minute interrogation, Defendant was provided a soft drink and the questioning occurred in a calm and professional manner. Defendant was probably in ankle shackles due to jail policy, but his handcuffs were removed for the interview. While the four officers present were armed, they did not draw their guns.

Neither testifying officer had a *Miranda* rights adviser form with him during the interrogation and neither officer typically uses such a form. While such forms are available to the officers, applicable policies do not require the use of a written advisement and waiver form or the recording of an interrogation. Neither officer thought it was necessary to use a waiver form in this case because law enforcement had four "witnesses" in the interview room.

During the execution of a search warrant obtained and executed by the Bartow County Sheriff's Office in Georgia the following day, July 24, 2015, methamphetamine, a loaded gun, and money were seized from the safe using the combination provided by Defendant.

### B. Testimony of Defendant

Defendant testified as follows. He is 59 and knows what *Miranda* warnings and rights are, but he was not advised of his *Miranda* rights at either the scene of his arrest on July 22 or at any time during his jailhouse interrogation on July 23. Defendant was at a shopping center in Tullahoma, Tennessee on July 22, but he is not sure where they were as he lives in Georgia and is not from the Tullahoma area. Defendant did not know any of the officers in this matter, and the officers did not know Defendant, prior to July 22.

Defendant saw Director Lane pull up to the Pathfinder with his blue lights flashing. Director Lane or another officer told Defendant and Mr. Hartley not to go anywhere and to stand in front of the Pathfinder. Defendant originally indicated that Director Lane immediately began to search the Pathfinder without asking questions. Defendant also said Director Lane first asked whose vehicle it was, whether either man had anything in the vehicle, and who was driving the vehicle before searching the Pathfinder. Defendant told officers he was driving because nobody else had a driver's license and that nothing in the Pathfinder was his. Defendant also said Director Lane did not "really ask" any questions at the scene because he already knew the Pathfinder belonged to Ms. Smith. Defendant was arrested and handcuffed within a minute or two of the officers' arrival. Defendant was taken to the Coffee County Jail without any further questioning. Defendant adamantly denied he was ever advised of his *Miranda* rights on July 22.

The next day, July 23, Defendant was pulled from his cell and brought to an interview room even though he did not request to speak with law enforcement. He remembered being handcuffed, but could not remember being shackled. When he got to the interview room, there were four officers present. None of them informed him of his *Miranda* rights, they simply started asking him questions. It was obvious to Defendant that Mr. Hartley had spoken to the officers

5

about "some things." Defendant thought the officers were trying to get Defendant to corroborate what Mr. Hartley said. Because Defendant would not tell Officer Brewer what the officers wanted to hear, Officer Brewer got mad and yelled at Defendant. The interview was only 10 minutes long because Defendant did not cooperate, did not tell the officers where to find the safe, and did not provide a combination to the safe. Defendant was again adamant that he was not advised of his *Miranda* rights and did not cooperate or make any incriminating statements during the July 23 interrogation.

Defendant knew Mr. Hartley for about a year prior to July 22. Defendant knew that Ms. Smith was Mr. Hartley's girlfriend because he saw them together at Mr. Hartley's house but Defendant did not really know Ms. Smith or know how long she and Mr. Hartley had been together. Defendant knew there was a safe in the garage of a particular house in Georgia but it was not his house; it was a female friend's house. Defendant helped the female friend move into the house and went to the garage/house about once a week, but he did not stay there. He stored "things" in the female friend's garage where the safe was found, but the safe was not his. Defendant has "no idea" how officers were able to get into the safe. Defendant said Mr. Hartley must have told the officers about the safe because he did not. Defendant also denied knowing there was any methamphetamine in the Pathfinder.

Defendant admitted he took one prescription pain pill, a Percocet that was not prescribed to him on July 21, but he denied any other illegal drug use from July 21 through July 23, 2015.

6

## II.     ANALYSIS

Alleging only that his Fifth Amendment rights and *Miranda* were violated by law enforcement because he was never advised of his *Miranda* rights, Defendant seeks to suppress any statements the officers claim he made on July 23, 2015, and all evidence seized from the safe on July 24, 2015.[2]

### A. Applicable Standards

The Fifth Amendment to the United States Constitution provides that a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman*, 74 F. App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V.). In *Miranda*, the Supreme Court upheld a suspect's constitutional right against compelled self-incrimination and established that no criminal suspect may be subjected to custodial interrogation without first being advised of the right to have counsel present and the right to remain silent. 384 U.S. at 478-79. "To ensure compliance with this rule, incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial." *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011). "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

"The Fifth Amendment's protection against compelled self-incrimination, from which *Miranda*'s warning requirement is derived, prevents the government from introducing unwarned statements against a criminal defendant at trial, but it does not apply to physical evidence."

---

[2] Defendant has not challenged the inventory search of the Pathfinder or his arrest. Defendant's motion, as filed, seeks to suppress statements he made the day of his arrest, July 22, 2015, but Defendant dropped this aspect of his motion at the conclusion of the hearing. Neither party has addressed Defendant's standing (i.e., his alleged expectation of privacy) to challenge the seizure of evidence from the safe.

*United States v. Reese*, 509 F. App'x 494, 503 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2780 (2013) (citation omitted). "The *Miranda* rule protects against violations of the Self–Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements." *Id*. at 503 (alteration and internal quotation marks omitted). *See also United States v. Lewis*, 110 F. App'x 569, 572 (6th Cir. 2004) ("The police's failure to issue Lewis a *Miranda* warning thus does not prevent the admission into evidence of the subsequently discovered firearm--the physical, nontestimonial fruit of his voluntary statements.").

### B. July 23, 2015 Statement

Defendant claims he was not advised of his *Miranda* rights before he was questioned by law enforcement on July 23, 2015, and that any statements must, therefore, be suppressed. The government argues *Miranda* warnings were given and that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights and made incriminating statements. Defendant does not argue that his *Miranda* waiver was not voluntary, knowing, and intelligent; rather, he claims he was never advised of his rights and thus could not relinquish them. He also denies that he made any incriminating statements.

As agreed by the parties at the conclusion of the hearing, the motion turns on the Court's determination of credibility regarding whether the *Miranda* warnings were given as claimed by law enforcement or not as claimed by Defendant. A court has wide latitude in making credibility determinations. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002). In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic. *See United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005).

After considering each witness's demeanor, descriptive account of the events, and overall impression, I **FIND** the officers gave credible testimony about the provision of *Miranda* warnings

to Defendant. Both testifying officers gave consistent and credible testimony, including testimony that Defendant was orally advised of his *Miranda* rights not once, but twice. Both officers credibly and consistently testified they witnessed *Miranda* warnings advisements being given to Defendant at the scene of arrest and again the next day just prior to Defendant's interrogation. Director Lane gave the *Miranda* warnings advisement on the day of the interrogation in the presence of three other officers. While perhaps the officers could have recorded the jailhouse interrogation or could have had Defendant sign an advisement of rights form, there is no requirement that they do either. *See Butler*, 441 U.S. at 373. I **FIND** the officers' testimony to be entirely consistent, plausible, supported, and an accurate account of the relevant events at issue.

Defendant's arguments to the contrary are weak at best. Defendant argues that the officers' consistent testimony may actually indicate only that the testimony was well prepared or rehearsed. Courts, however, may conclude that the "consistency of the two officers' accounts" indicates that their statements are credible. *United States v. Garrido*, 467 F.3d 971, 979 (6th Cir. 2006); *see also United States v. Simmons*, 174 F. App'x 913, 917 (6th Cir. 2006) (finding officers' testimony credible because it was substantively consistent); *United States v. Craft*, 150 F. App'x 413, 415 (6th Cir. 2005) (finding officers credible because they "testified consistently, one with the other."). Defendant also appears to question why the government did not call Director Lane as a witness. Given that two of the officers present when Director Lane advised Defendant of his *Miranda* rights before the interrogation began were called as witnesses, it is likely that Director Lane's testimony would have been merely cumulative.[3] In short, Director Lane's absence from

---

[3] Defendant did not subpoena Director Lane or apparently even request that the Government make Director Lane available as a witness.

the hearing, standing alone, does not indicate the officers fabricated the provision of *Miranda* warnings to Defendant.

In contrast to the officers' testimony, Defendant's version of events is fairly unbelievable. It seems unlikely that Defendant would drive from Georgia to Tullahoma, Tennessee and wait in a parking lot while Ms. Smith, a woman he claims he barely knew, unbeknownst to him took methamphetamine to a rendezvous with what turned out to be a confidential informant setting up an arrest. It is even more doubtful that Defendant knew nothing about the large amount of methamphetamine left in the Pathfinder with him and Mr. Hartley, his friend of one year and the boyfriend of Ms. Smith. His testimony about not saying anything to the officers about the methamphetamine-containing safe stored with his other property in his female friend's garage is farfetched at best. Defendant's assertions that the officers fabricated his statements, perhaps based on some information that Mr. Hartley provided is simply implausible given that there was no evidence whatsoever presented that Mr. Hartley stored items in the garage or provided a combination to the safe to the officers. While each of Defendant's claims is improbable on its own, in combination they border on fantastical and I **FIND** Defendant's testimony to be patently false.

In addition, Defendant has a huge incentive to lie because it appears he is facing a significant mandatory minimum sentence of either 20 years or life imprisonment if convicted in this case due to his prior felony convictions. While the officers may have an incentive to support their cases as argued by Defendant, there is no evidence that they have any history of fabricating evidence, no evidence they knew of Defendant prior to his arrest, and no evidence of any particular reason why they would falsify a written report and search warrant in July of 2015 and then commit perjury in this case as claimed by Defendant.

10
Case 4:15-cr-00013-TRM-SKL   Document 56   Filed 04/06/16   Page 10 of 11   PageID #: 217

Stated simply, the government has demonstrated that no violation of Defendant's Fifth Amendment rights or *Miranda* occurred. As Defendant has argued no other basis for the suppression of evidence from the safe, his argument for suppression of all evidence from the safe fails and it is not necessary to address any alternative argument that the failure to issue *Miranda* warnings does not prevent the admission into evidence of physical, nontestimonial fruit of voluntary statements. As to Defendant's claims that he made no incriminating statements and knows nothing of the contents of the safe, those are issues reserved for the factfinder at trial.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[4] that Defendant's motion to suppress [Doc. 48] be **DENIED** in its entirety.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).