# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| JAMES HEDELSKY, | ) | |
| | ) | Case Nos. 4:18-cv-51, 4:15-cr-13 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner James Hedelsky's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1 in Case No. 4:18-cv-51; Doc. 169 in Case No. 4:15-cr-13). Petitioner has also moved for an evidentiary hearing (Doc. 3 in Case No. 4:18-cv-51), to appoint counsel (Doc. 5 in Case No. 4:18-cv-51), and to obtain transcripts (Doc. 12 in Case No. 4:18-cv-51). For the following reasons, the Court concludes that an evidentiary hearing is unnecessary and will **DENY** Petitioner's Section 2255 motion (Doc. 1 in Case No. 4:18-cv-51), as well as his motions for an evidentiary hearing, to appoint counsel, and to obtain transcripts (Docs. 3, 5, 12 in Case No. 4:18-cv-51).

## I.     BACKGROUND

On October 27, 2015, a federal grand jury returned a two-count indictment, charging Petitioner with: (1) conspiracy to distribute fifty grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count One"); and (2) possession with intent to distribute fifty grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C.

§ 2 ("Count Two"). (Doc. 1 in Case No. 4:15-cr-13.)

At trial, the jury heard testimony from 17th Judicial Drug and Violent Crime Task Force Director Timothy Lane. (Doc. 156, at 53 in Case No. 4:15-cr-13.) According to Lane's testimony, in July 2015, law enforcement officers were attempting to locate Takesta Smith to arrest her on state and federal charges. (*Id.* at 56.) On July 22, 2015, with the help of a confidential informant, officers located Smith at a mall in Tullahoma, Tennessee. (*Id.* at 57–58.) Officers arrested Smith after the confidential source picked her up at the mall and drove away. (*Id.*) After arresting Smith, officers returned to the mall parking lot because the confidential source indicated that Smith had been driving a black Nissan Pathfinder and they wanted to see if the Pathfinder in the mall parking lot met the confidential source's description. (*Id.* at 58.) When officers confirmed that the Pathfinder met the confidential source's description, they pulled up to the vehicle and saw Petitioner, along with David Hartley, one of his co-defendants, standing next to the vehicle. (*Id.*) Petitioner and the co-defendant indicated to the officers that the vehicle belonged to Smith, but Petitioner acknowledged that he was driving the vehicle, and, when officers searched Petitioner, they found the key to the Pathfinder on his person. (*Id.* at 59–60.) When officers conducted an inventory search of the Pathfinder, they found over 194 grams of methamphetamine and several documents addressed to Petitioner at a Cartersville, Georgia address. (*Id.* at 62, 69–70.) After officers searched the Pathfinder, they arrested Petitioner. (*Id.* at 76.)

At trial, the Government also presented testimony from Lane and 17th Judicial District Task Force Officer Kyle Brewer regarding law enforcement's post-arrest, post-*Miranda* interview of Petitioner at a jail the day after he was arrested. (*Id.* at 80; Doc. 157, at 25–26 in Case No. 4:15-cr-13.) According to Lane and Brewer, Petitioner admitted that he drove Smith

2

and Hartley to Tennessee from Georgia on multiple occasions so that they could sell methamphetamine. (Doc. 156, at 80 in Case No. 4:15-cr-13; Doc. 157, at 26 in Case No. 4:15-cr-13.) Lane and Brewer also testified that, during this interview, Petitioner informed them that he had a safe containing drugs and money in a garage at the Cartersville, Georgia address and told the officers the combination to the safe. (Doc. 156, at 81 in Case No. 4:15-cr-13; Doc. 157, at 28 in Case No. 4:15-cr-13.) Based on this information, officers in Georgia obtained and executed a search warrant at the residence in Cartersville, Georgia, where they found methamphetamine, a loaded firearm, and over a thousand dollars in the safe in the garage.[1] (Doc. 156, at 132 in Case No. 4:15-cr-13.)

At trial, the jury also heard testimony from Smith. (*Id*. at 165.) Smith testified that she purchased methamphetamine for resale from co-defendant, David Hartley, whom she observed receiving methamphetamine from Petitioner. (*Id*. at 169–70.) Smith also testified that, on July 22, 2015, she, Hartley, and Petitioner met in Georgia, where they picked up methamphetamine from a storage shed and weighed the methamphetamine in Petitioner's garage in Georgia. (*Id*. at 172–74.) From there, Petitioner drove Smith in the Pathfinder to Tennessee, with Hartley following on his motorcycle, so that Smith could sell methamphetamine. (*Id*. at 172–80.) After the Government rested, Petitioner elected not to offer proof. (Doc. 157, at 78, in Case No. 4:15-cr-13.)

On September 16, 2015, the jury convicted Petitioner on Count One but could not reach a verdict on Count Two. (Doc. 112 in Case No. 4:15-cr-13.) The Court subsequently granted the Government's motion to dismiss Count Two without prejudice. (Doc. 128 in Case No. 4:15-cr-

---

[1] Brian Bunce, a former detective for the Barto County Sheriff's Office, testified that he was able to open the safe using the combination supplied by Brewer. (Doc. 156, at 132–33, in Case No. 4:15-cr-13.)

13.) Because the Government filed an information pursuant to 21 U.S.C. § 851 (Doc. 35 in Case No. 4:15-cr-13), the Court imposed a mandatory life sentence (Doc. 152 in Case No. 4:15-cr-13).

Petitioner appealed his conviction to the United States Court of Appeals for the Sixth Circuit, arguing that the Court erred in admitting testimony about the evidence recovered from the safe at the Carterville, Georgia, residence and that there was insufficient evidence in the record to support his conspiracy conviction. (*See* Doc. 162 in Case No. 4:15-cr-13.) The Sixth Circuit affirmed Petitioner's conviction and sentence on August 17, 2017, holding, among other things, that the evidence recovered from the safe was probative of whether Petitioner was engaged in a conspiracy to distribute methamphetamine because he "possessed a distribution quantity of methamphetamine" in the safe, which was "in the same location where he prepared the methamphetamine for sale with [his co-defendants] on the day he was arrested." (*Id*. at 3.)

On August 13, 2018, Petitioner filed a timely motion to vacate, set aside, or correct his sentence pursuant to Section 2255.[2] (Doc. 1 in Case No. 4:18-cv-51.) This motion is now ripe for the Court's review.

---

[2] Section 2255(f) is a one-year statute of limitations on all petitions for collateral relief under Section 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). The Sixth Circuit affirmed Petitioner's conviction on August 17, 2017, and Petitioner did not seek a writ of certiorari from the United States Supreme Court. Accordingly, Petitioner's judgment of conviction became final when the ninety-day period for seeking a writ of certiorari expired on November 15, 2017. *See Clay v. United* States, 537 U.S. 522, 525 (2003). Petitioner filed the instant motion on July 24, 2017, which falls within the one-year window for requesting collateral relief. Accordingly, Petitioner's motion is timely filed.

## II. STANDARD OF REVIEW

To obtain relief under § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Additionally, in ruling on a motion made pursuant to § 2255, the Court must determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin*, 889 F.3d at 832 (internal quotations omitted). While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the district court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. When petitioner's factual narrative of the events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, the petitioner is entitled to an evidentiary hearing. *Id*.

## III. ANALYSIS

In his Section 2255 motion, Petitioner claims that he suffered errors of constitutional magnitude primarily based on the way the Government, his attorney, and the Court handled evidence related to the safe in the Cartersville, Georgia, residence. (*See generally* Doc. 1 in Case No. 4:18-cv-51.) Contrary to Lane and Brewer's testimony at trial, Petitioner claims he never told Lane and Brewer the combination to the safe in his post-arrest interview. (*Id*.) Contending that Lane and Brewer perjured themselves, the Government knew Lane and Brewer were perjuring themselves, his attorney had no effective strategy for combating the perjured testimony, and the Court erred in admitting evidence related to the safe, Petitioner asserts that his due-process rights were violated and that he received ineffective assistance of counsel. (*Id*.) As explained below, because each of Petitioner's arguments fails, the Court will deny his Section 2255 motion.

### A. Violation of Due-Process Rights

Petitioner first argues that he is entitled to relief under Section 2255 because the Government violated his due-process rights and denied him a fair trial. (*Id*. at 15.) Specifically, Petitioner argues that his due-process rights were violated because: (1) law enforcement witnesses lied while under oath at trial, and the Government knew they were lying; (2) the Government improperly vouched for the credibility of certain witnesses; (3) the Government withheld evidence favorable to Petitioner; (4) the Government failed to publish to the jury the Drug Enforcement Administration ("DEA") report summarizing a post-arrest interview of Petitioner; and (5) law enforcement used a fraudulent warrant to keep Petitioner in jail. (*Id*. at 15–17, 22.)

To the extent Petitioner contends that he is entitled to relief solely because Lane and Brewer perjured themselves at trial, that claim fails because perjured testimony without government knowledge does not provide a basis for habeas corpus relief:

> An allegation of perjury, apart from an allegation of knowing use by the Government of that perjury, constitutes no basis for habeas corpus or *coran nobis* relief as it alleges no error of constitutional dimensions. The credibility of witnesses is ordinarily for trial by the jury in a criminal trial. False evidence and perjury are matters that may be raised on the trial and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions.

*United States v. Castano*, 906 F.3d 458, 464–65 (6th Cir. 2018) (quoting *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975)). Accordingly, Petitioner is not entitled to relief based on his assertion that Lane and Brewer provided false testimony at trial.

To the extent Petitioner claims he is entitled to relief because the Government knowingly sponsored perjured testimony, that claim also fails. "The 'deliberate deception of court and jury by the presentation of testimony known to be perjured' violates a defendant's due-process rights." *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). However, "[t]o prevail on such a claim, [a petitioner] must show that the Government knowingly presented false testimony that materially affected the proceeding." *Id*. "[M]ere inconsistencies will not suffice"; rather, the petitioner "must prove that the Government's testimony was indisputably false." *Id*. (internal quotations omitted).

In this case, Petitioner's motion fails because he has not identified any facts indicating that the Government knowingly presented false testimony at trial. First, Petitioner has not presented sufficient facts to demonstrate that Lane and Brewer perjured themselves when they testified he told them the combination to the safe at the Cartersville, Georgia, residence. Second, even if Lane and Brewer falsely testified that Petitioner told them the safe combination in the

7

post-arrest interview, there is nothing in the record suggesting that the Government knew the testimony was false and elected to present it anyway.

Petitioner's motion also fails to the extent he contends that the Government violated his due-process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose favorable evidence. "*Brady* violations involve a three-part test: 'The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Castano*, 906 F.3d at 466 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "Prejudice means that the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id*.

Here, Petitioner has not demonstrated that the Government failed to disclose *Brady* material. Indeed, Petitioner's motion generically states that the Government "fail[ed] to disclose evidence favorable to the defense" (Doc. 1 at 15 in Case No. 4:18-cv-51), but Petitioner fails to identify what that evidence is. Petitioner has failed satisfy his burden to demonstrate that the Government failed to disclose exculpatory or impeachment evidence, that the Government willfully or inadvertently suppressed such evidence, or that prejudice ensued. Accordingly, Petitioner is not entitled to relief based on his assertion that the Government violated its obligations under *Brady*.

Petitioner's motion also fails to the extent he claims the Government violated his due-process rights by failing to publish to the jury a Drug Enforcement Administration ("DEA") report summarizing his post-arrest interview. Although Lane and Brewer's testimony referenced a DEA report that Brewer authored summarizing Petitioner's post-arrest interview, Petitioner

cites no authority supporting his assertion that such testimony obligates the Government to seek to admit the report into evidence or publish the report to the jury.

Finally, Petitioner's motion fails to the extent he claims the Assistant United States Attorney improperly vouched for the credibility of Lane and Brewer on redirect examination when he asked them why they did not record Petitioner's interview.

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. . . . This generally involves either blunt comments asserting personal belief, or comments that imply special knowledge of facts not before the jury or the credibility or truthfulness of the witness.

*United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).

During trial, Petitioner's counsel sought to undermine Lane and Brewer's credibility by questioning them about why Petitioner's post-arrest interview was not recorded. On redirect examination, the Assistant United States Attorney asked Lane and Brewer to explain why they did not record the interview and to explain the basis for their testimony that Petitioner told them the combination to the safe in the interview. Contrary to Petitioner's assertions, the Assistant United States Attorney's questions did not indicate his personal belief in Lane or Brewer's testimony or imply that he had special knowledge of facts not before the jury. Accordingly, Petitioner has failed to demonstrate that the Government improperly vouched for the credibility of Lane and Brewer and, thus, has failed to demonstrate that his due process rights were violated.

### B. Ineffective Assistance of Counsel

Petitioner next argues that he received ineffective assistance of counsel because his attorney failed to: (1) pursue the issue of prosecutorial misconduct at trial and on direct appeal; (2) properly impeach government witnesses; (3) "object to major issues in trial and direct appeal"; (4) "interview and secure witnesses for trial" and "investigate any relevant issues"; and

9

(5) have any defense. (*See* Doc. 1, at 17–20 in Case No. 4:18-cv-51.) Petitioner also argues that "[c]ounsel made damaging statements," had a conflict of interest, and failed to consult with him "about direct appeal." (*Id.* at 17–19.)

To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, the court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

In this case, Petitioner's claims of ineffective assistance of counsel fail because he has not demonstrated that his counsel's representation fell below an objective standard of care or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. First, as discussed above, Petitioner has not identified credible evidence suggesting that Lane and Brewer perjured themselves while testifying about

the safe and Petitioner's post-arrest interview at trial, that the Government knowingly presented false testimony, or that the Government improperly vouched for witnesses at trial. As a result, Petitioner cannot demonstrate that his counsel's representation fell below an objective standard of care by failing to pursue prosecutorial or law-enforcement misconduct theories at trial or by failing to impeach these witnesses. Moreover, the trial transcript is replete with examples of counsel's efforts to undermine Lane and Brewer's credibility by questioning them about why they failed to record Petitioner's post-arrest interview and why they failed to have Petitioner sign a *Miranda* waiver. (*See, e.g.*, Doc. 156, at 101–07 in Case No. 4:15-cr-13.) Given the "strong presumption" that counsel's strategic decisions at trial fell within a wide range of reasonable professional assistance, Petitioner has failed to demonstrate that his counsel's actions fell below an objective standard of reasonableness with regard to Petitioner's allegations regarding prosecutorial and law-enforcement misconduct, his allegations that the Government improperly vouched for Lane and Brewer's testimony, and his allegations that his counsel should have impeached Lane and Brewer based on their false testimony or more strenuously objected to their testimony regarding the safe.[3]

Petitioner's motion also fails to the extent he contends he received ineffective assistance of counsel because his attorney failed "to have any defense theory." (Doc. 1, at 19 in Case No. 4:18-cv-51.) The Court construes Petitioner's argument as taking issue with his counsel electing not to call any witnesses after the Government rested. Petitioner, however, has not identified any witnesses he contends should have been called or about what those witnesses would have

---

[3] Petitioner also appears to argue that his counsel's performance was so deficient that his conduct "help[ed] the Government get [their] conviction," thereby creating a conflict of interest. (Doc. 1, at 19 in Case No. 4:18-cv-51.) Because Petitioner has failed to demonstrate that his attorney's conduct fell below an objective standard of care, his assertion that his attorney somehow helped the Government and created a conflict of interest also fails.

testified. Further, counsel's decision not to put on evidence and hold the Government to its burden of proof was a reasonable trial strategy. *See United States v. Perales*, No. 3:12 CR 186, 2014 WL 12586393, at *2 (N.D. Ohio Dec. 3, 2014) (citing *Hale v. Davis*, 512 F. App'x 516, 521–22 (6th Cir. 2013)).

To the extent Petitioner claims his counsel failed to adequately investigate potential defense witnesses, that argument also fails. As the Government correctly notes, Petitioner has failed to identify what counsel should have done differently with respect to investigating potential witnesses. Moreover, to the extent Petitioner claims his counsel should have further investigated evidence related to the safe through "Ms. Katen," that argument fails because Petitioner's motion acknowledges that his counsel tried to track down Ms. Katen with the help of the United States Marshal's Service and was unsuccessful. (Doc. 1, at 19 in Case No. 4:18-cv-51.) Accordingly, Petitioner has failed to demonstrate that counsel failed to adequately investigate potential witnesses and that counsel's actions fell below an objective standard of care.[4]

Finally, even if counsel's representation somehow fell below an objective standard of reasonableness, Petitioner's ineffective-assistance claim still fails because he cannot demonstrate he was prejudiced by his counsel's performance. At trial, Lane, Brewer, and Smith all testified regarding Petitioner's involvement in a methamphetamine-distribution conspiracy that included him driving Smith and Hartley from Georgia to Tennessee so that Smith could sell

---

[4] To the extent Petitioner argues that he received ineffective assistance of counsel based on counsel's alleged failure to consult with him during his direct appeal, that argument also fails because Petitioner has not identified any issue he wanted counsel to raise or explained how raising that issue would have resulted in a different outcome on direct appeal. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) ("Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.").

methamphetamine. Smith further testified that she purchased methamphetamine for resale from Hartley and that she observed Hartley receive methamphetamine from Petitioner. As a result, even setting aside the evidence related to the safe, there was more than sufficient evidence in the record to convict Petitioner of engaging in a conspiracy to distribute methamphetamine. Petitioner, therefore, cannot show that he was prejudiced by counsel's alleged failures.

### C. Federal Rule of Evidence 404(b)

Petitioner next argues that admission of evidence regarding the safe, including the drugs, gun, and money found in the safe, violated Federal Rule of Evidence 404(b). This argument, however, fails because Petitioner raised this argument on direct appeal, and the Sixth Circuit rejected it, holding that the Court did not err in admitting this evidence and that, even if it did, such error was harmless. (Doc. 162, at 3 in Case No. 4:15-cr-13.) Absent extraordinary circumstances, which Petitioner has failed to demonstrate, Petitioner cannot use a motion under Section 2255 to relitigate issues decided on direct appeal. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances."). Accordingly, Petitioner's argument that the Court erred by admitting the contents of the safe into evidence under Rule 404(b) fails.[5]

---

[5] In his motion, Petitioner also appears to argue that his *Miranda* rights were violated by law enforcement and that his life sentence was illegal. Because Petitioner did not raise these arguments on direct appeal, they are procedurally defaulted. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, Petitioner's motion fails to demonstrate that he is entitled to review these procedurally defaulted claims because he has not shown good cause for failing to raise the claim and actual prejudice that would result if these claims are not reviewed, or that he is actually innocent. *See id*. Finally, even if these claims were not procedurally defaulted, they would still fail on the merits because the Court previously found that Petitioner's *Miranda* rights were not violated when it ruled on his motion to suppress and because the Court correctly imposed a mandatory life sentence based on Petitioner's three prior felony drug convictions. (*See* Docs. 35, 56, 58, 145 in Case No. 4:15-cv-13.)

## IV.    CONCLUSION

For the reasons stated herein, the Court concludes that an evidentiary hearing is unnecessary, and Petitioner's Section 2255 motion (Doc. 1 in Case No. 4:18-cv-51; Doc. 169 in Case No. 4:15-cr-13) is **DENIED**.[6]  Should Petitioner give timely notice of an appeal from this order, such notice will be treated as an application for a certificate of appealability, which is hereby **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right or "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court [is] correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[6] In addition to his Section 2255 motion, Petitioner has filed a motion to appoint counsel, a motion for an evidentiary hearing, and a motion for transcripts.  Rule 8 of the Rules Governing Section 2255 Proceedings provides for the appointment of counsel if an evidentiary hearing has been set and the moving party qualifies to have counsel appointed under 18 U.S.C. § 3006A.  In this case, an evidentiary hearing is not necessary, and, while the Court has discretion to appoint counsel when the interests of justice so require, there is no reason to appoint an attorney, because the record conclusively shows that Petitioner is not entitled to relief.  Additionally, the Court will deny Petitioner's motion for transcripts because Petitioner has not demonstrated a particularized need for transcripts.  First, it is clear from citations in Petitioner's Section 2255 motion that he has access to transcripts from trial, and Petitioner did not file his motion for transcripts until after he filed his Section 2255 motion and after he filed his thirty-six-page reply in support of his Section 2255 motion.  (*See* Docs. 1, 11 in Case No. 4:18-cv-51.)  Second, Petitioner has not explained why he needs transcripts from his sentencing hearing or the "preliminary hearing" in Coffee County, Tennessee General Sessions Court.  Accordingly, the Court will **DENY** Petitioner's motions for an evidentiary hearing, to appoint counsel, and for transcripts (Docs. 3, 5, 12 in Case No. 4:18-cv-51.)

14